**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.H.-1, K.H.-2, W.H.-1, B.H., and A.H.**

**No. 19-0474** (Harrison County 17-JA-142-2, 17-JA-143-2, 17-JA-144-2, 17-JA-145-2, and 17-JA-146-2)

## MEMORANDUM DECISION

Petitioner Father W.H.-2, by counsel Julie N. Garvin, appeals the Circuit Court of Harrison County's March 19, 2019, order terminating his parental rights to K.H.-1, K.H.-2, W.H.-1, B.H., and A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Dreama D. Sinkkanen, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-dispositional improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the mother after conducting a lengthy investigation regarding conditions in the home. The DHHR alleged that the children had been living with different friends and family since August of 2017 due to their parents' erratic behaviors and inability to provide for their children. Thereafter, petitioner took no responsibility for his children and failed to participate in their lives. At the end

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as K.H.-1 and K.H.-2, respectively, throughout this memorandum decision. Further, because one of the children and petitioner share the same initials, we will refer to them as W.H.-1 and W.H.-2, respectively.

of August of 2017, the DHHR received a referral that K.H.-2 called a family friend, crying and scared. K.H.-2 asked the family friend to pick him up from his home because his mother "was acting crazy and . . . the police were coming to take everyone away." A Child Protective Services ("CPS") worker visited the home and spoke with the children. K.H.-1 and K.H.-2 reported that petitioner could be violent and that his violent outbursts were very scary. The children also reported that their parents did not provide them with food to eat, spent a lot of time in a shed behind their home, and used drugs. The children further reported that they were scared to live in their home. The worker made initial contact with the parents that day, but was unable to locate them throughout September and October of 2017. The petition also alleged that petitioner had a criminal history, which included, but was not limited to, domestic battery of K.H.-1 and the children's mother and a DUI. The DHHR concluded that petitioner had a history of domestic violence, failed to adequately supervise the children, subjected the children to unsafe conditions and a drug-endangered environment, and failed to provide the children with general necessities, all of which constituted abuse and neglect of his children.

In November of 2017, the circuit court held a preliminary hearing where petitioner requested that the DHHR maintain legal and physical custody of his children due to his homelessness and continued use of methamphetamines. Shortly thereafter, the DHHR set up services for petitioner, including random drug screens, a drug and alcohol assessment, supervised visitation, individualized parenting and adult life skills classes, individual therapy, and a psychological parenting evaluation. In January 2018, petitioner submitted to the psychological parenting evaluation. The psychologist recommended that petitioner partake in an intensive outpatient treatment program or residential treatment for his drug use.

In February of 2018, the circuit court held an adjudicatory hearing. Petitioner entered into a stipulated adjudication based upon the allegations contained in the petition. Accordingly, the circuit court adjudicated petitioner as an abusing parent based upon his issues with substance abuse, domestic violence, and his general failure to provide for the children. Thereafter, petitioner moved for a post-adjudicatory improvement period. This motion was later granted, and the terms of the improvement required petitioner to maintain a stable, clean, and drug-free residence and participate in out-patient treatment as recommended, random drug screens, alcohol and narcotics anonymous meetings, and parenting classes, among other things. Petitioner was largely non-compliant with these terms and was arrested on two different occasions for the felony offenses of conspiracy to commit delivery of a controlled substance and possession with the intent to deliver a controlled substance. Despite his continued substance abuse issues and general noncompliance, petitioner filed a motion for a post-dispositional improvement period in December of 2018.

In February of 2019, the circuit court held a hearing on petitioner's motion for a post-dispositional improvement period and a dispositional hearing. Petitioner submitted to a court-ordered drug screen prior to the commencement of the hearing and tested positive for amphetamine, methamphetamine, and benzodiazepines. The DHHR presented the testimony of multiple witnesses, including petitioner's evaluating psychologist, police officers, service providers, a substance abuse case manager from United Summit Center, the program director at Appalachian Teen Challenge, and a CPS worker. The police officers testified in regard to petitioner's drug-related arrests in May and August of 2018. Specifically, in May of 2018, petitioner was arrested after a traffic stop revealed petitioner's possession of heroin, Tramadol,

Xanax, marijuana, empty baggies, scales, syringes, two stolen firearms, ammunition, and a large amount of cash. Similarly, in August of 2018, petitioner was arrested after a traffic stop revealed his possession of a white powder that field-tested positive for methamphetamine, digital scales, two firearms, a large amount of cash, and a counterfeit twenty-dollar bill.

The substance abuse case manager from United Summit Center and the program director at Appalachian Teen Challenge both testified in regard to petitioner's noncompliance with the drug rehabilitation services offered to him. The case manager from United Summit Center testified that after multiple missed and rescheduled appointments, petitioner was scheduled to begin the substance abuse intensive outpatient program ("SAIOP") in April of 2018, but never began and was discharged for noncompliance in June of 2018. Petitioner was again referred to begin the SAIOP on three other occasions spanning from September of 2018 to January of 2019, but either did not show up or failed to complete the program after attending only two sessions. Similarly, the program director at Appalachian Teen Challenge testified that petitioner enrolled in its twelve-month, in-patient substance abuse treatment program on June 5, 2018, and left on June 27, 2018, to appear in court but never returned.

The evaluating psychologist testified that petitioner presented for his evaluation in January of 2018. Petitioner informed the psychologist that he had a prescription for Xanax; however, the psychologist noted that petitioner showed no symptoms of anxiety or trauma that would warrant such a prescription. Petitioner also informed the psychologist that he had a long history of substance abuse beginning at age twelve. He reported having a long period of sobriety before he started abusing pain pills and methamphetamine in 2015. Petitioner further informed the psychologist that he engaged in daily methamphetamine use and last used the day before his evaluation. The psychologist found that petitioner understood and could differentiate between abuse and appropriate parenting and did not have any cognitive defects; however, his substance abuse issues impacted his ability to adequately parent his children. The psychologist testified that his initial prognosis for petitioner was "guarded," noting that petitioner would be unable to provide for his children while in active substance abuse. However, after the psychologist was presented with the information of petitioner's arrests and noncompliance with services and treatment efforts at the hearing, he changed his prognosis of petitioner to "poor."

The service providers and CPS worker offered additional testimony about petitioner's noncompliance with services. Their testimony revealed that petitioner was referred to Family Optics for supervised visitation, adult life skills, and individualized parenting services in October of 2017. Of petitioner's twelve scheduled visits, he missed four, was late to five, and was ultimately discharged for noncompliance. Petitioner was also referred to HomeBase, Inc. for supervised visitation services from May of 2018 until July of 2018. During that time, petitioner only participated in one visit, for which he arrived late. Services were closed for noncompliance thereafter but were reopened to petitioner in November of 2018. However, the provider was unable to contact petitioner, and petitioner never contacted the provider. As such, services were again closed by HomeBase due to petitioner's noncompliance. Petitioner had one visit with his children in March of 2018 and one visit in June of 2018. As of the date of the dispositional hearing, petitioner had not seen his children since the June of 2018 visit. Lastly, petitioner was ordered in April of 2018 to submit to drug and alcohol screens at the Harrison County Day Report Center every day the center was open. Of petitioner's 242 scheduled screens, he missed 208, all of which

3

the circuit court considered to be positive, excluding the dates petitioner was incarcerated. Of the thirty-five screens petitioner submitted to, only nine were negative, with the remainder being positive for an array of substances at each screen. Based upon petitioner's continued drug use and failure to participate in any services designed to reduce or prevent the circumstances of abuse to the children, the CPS worker testified that the DHHR recommended termination of his parental rights.

After hearing the evidence presented, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated his parental rights. In making its findings, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future given his habitual use of controlled substances and failure to follow through with the appropriate and recommended treatment, services, and rehabilitative efforts offered to him. Accordingly, the circuit court concluded that the children's best interests required termination of petitioner's parental rights. It is from the March 19, 2019, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that he was entitled to a post-dispositional improvement period because he filed the appropriate motion, demonstrated his willingness to participate in the improvement period, and experienced a substantial change in circumstances. According to petitioner, his strong bond with his children, his acknowledgment of his substance abuse problem and poor decision making, and his need for intensive rehabilitation warranted a post-dispositional improvement period. We disagree.

---

[2]The mother's parental rights to the children were also terminated below. According to the guardian, K.H.-1 has reached the age of majority and is no longer in the DHHR's custody. K.H.-2 is placed in the home of a classmate's family with a permanency plan of legal guardianship. W.H.-1, B.H., and A.H. are placed together in a kinship placement with a permanency plan of adoption therein.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Pursuant to West Virginia Code § 49-4-610(3)(D) (2015), a circuit court may grant a post-dispositional improvement period when,

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Because petitioner was granted a post-adjudicatory improvement period, he was required to demonstrate a substantial change in circumstances in addition to his likelihood of fully participating in an improvement period in order to be granted a post-dispositional improvement period. While petitioner asserts that he had a substantial change in circumstances, he offers no evidence in support of this assertion. Moreover, although petitioner argues that his acknowledgment of his substance abuse problem and strong bond with his children demonstrated his likelihood of fully participating in a post-dispositional improvement period, he fails to acknowledge his virtually non-existent participation in the post-adjudicatory improvement period. As noted in detail above, the record reflects that petitioner was given extensive opportunities to correct the problems and deficiencies that led to the filing of the petition in this matter but failed to partake in the myriad of resources offered to him. Given petitioner's overall failure to comply with the terms of his post-adjudicatory improvement period, we find no error in the circuit court's denial of his motion for a post-dispositional improvement period.

Finally, petitioner argues that the circuit court erred in terminating his parental rights, as opposed to imposing a less-restrictive dispositional alternative. Specifically, petitioner argues that the circuit court could have protected the welfare of his children by terminating his custodial rights as opposed to his parental rights. Additionally, petitioner argues that there was insufficient evidence to support the circuit court's findings that there was no reasonable likelihood the conditions of neglect or abuse could be corrected and that termination was necessary for the children's welfare. Upon our review, however, we find that these findings were based on substantial evidence and were not in error.

Many of the same facts the circuit court relied upon in denying petitioner's motion for a post-dispositional improvement period also support the findings at issue in this assignment of error. Most notably, petitioner's noncompliance with the terms and conditions of his post-adjudicatory improvement period and his habitual drug use demonstrate that there was no reasonable likelihood that he could substantially correct the conditions of neglect and abuse. Pursuant to West Virginia Code § 49-4-604(c)(3) (2019), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

As set forth in detail above, petitioner failed to comply with the terms and conditions of his post-adjudicatory improvement period despite the countless opportunities he was given to improve his parenting and treat his substance abuse. In fact, petitioner's compliance was so dismal, the circuit court noted that "in thirty-six years, [it] [had] never met a parent who [had] done less or who [had] put himself first before his children to such a degree." While petitioner asserts that the circuit court could have protected the welfare of his children by terminating his custodial rights as opposed to his parental rights, he fails to acknowledge that this result would have prevented his children from achieving a permanent, stable home. Moreover, the circuit court found that petitioner's habitual, pervasive, and severe drug abuse "seriously impair[ed] his parenting skills to [such] a degree as to pose an imminent risk to the children's health, safety[,] and welfare." West Virginia Code § 49-4-604(b)(6) permits circuit courts to terminate parental rights upon these findings. Furthermore, this Court has previously held that

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 19, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 17, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7